UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------
:
PRISCILLA RUCKER,                            :       CASE NO. 1:08-cv-767
                                             :
        Plaintiff,                           :
                                             :
v.                                           :       OPINION & ORDER
                                             :       [Resolving Docs. 25 & 28]
ARCHITECT OF THE CAPITOL,                    :
                                             :
        Defendant.                           :
                                             :
------------------------------------------------------

JAMES S. GWIN,[1/] UNITED STATES DISTRICT JUDGE:

       Plaintiff Priscilla Rucker filed this lawsuit against Defendant Architect of the Capitol, her employer, asserting claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Generally, Rucker claims that Defendant permitted a hostile work environment in which a coworker sexually harassed her. Additionally, Rucker claims that the Defendant Architect of the Capitol retaliated against her for making prior Title VII complaints. Both parties have moved for summary judgment, *see* [Docs. 25 & 28], and both have opposed each others' motions for summary judgment, *see* [Docs. 28, 32, 35]. For the following reasons, the Court **DENIES** Rucker's motion for summary judgment and **GRANTS** the Defendant Architect of the Capitol's motion for summary judgment.

I.

       Most of Rucker's employment history with the Defendant's office is not in dispute. Since

---

[1/] The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting by designation.

Case No. 1:08-cv-767
Gwin, J.

1991, Rucker has worked for the Defendant as a custodian in the Day Laborer Division. During the course of that employment, Rucker claims to have been harassed by a male coworker, Danny Beverly, on two occasions. The first incident occurred in the summer of 2006. According to Rucker, Beverly approached her while she was directing traffic outside the Senate Office Building and told her that he "liked the way [she] was using [her] hands" and that he "wanted [her] to rub oil all over [Beverly's] body." [Doc. 28-5, at 2].

Rucker mentioned this incident to her supervisor, Rick Joyce. Supervisor Joyce told Rucker to put her allegations into writing and told her that he would begin a formal investigation after she had done so. Although Joyce had given Rucker an opportunity to proceed with her complaint, Rucker declined to write down what had happened, and Joyce did not further investigate the matter. [Doc. 25-2, at 2].

The second incident occurred about a year later, in July 2007. According to Plaintiff Rucker, co-worker Beverly "approached [her] from behind and slid his hand up [her] leg and under [her] skirt" as they both walked down a hallway. [Doc. 28-5, at 3]. Rucker was "so shocked and humiliated" that her legs buckled underneath her, and she almost fell to the ground. *Id.*

On July 17, 2007, Rucker sent a memorandum about this second incident to Architect of the Capitol Assistant Superintendent Marvin Simpson. In the memorandum, Rucker wrote that she was "touched by [Mr.] Beverly in the rear of [her] right knee." [Doc. 25-2, at 7-8].

In addition, on August 6, 2007, Rucker filed a formal complaint known as a "Decision to Enter Conciliation Program" with Defendant's Equal Employment Opportunity (EEO) office regarding the second incident with Beverly. In the filing, Rucker wrote that Beverly had "put his hand on [her] body." [Doc. 25-2, at 10].

Case No. 1:08-cv-767
Gwin, J.

The Defendant Architect of the Capitol responded to Rucker's formal complaint regarding the second incident. Robert Olson, Beverly's supervisor, "immediately" spoke with Beverly about the incident. [Doc. 25-2, at 12]. Beverly admitted touching Rucker but denied that any harassment had occurred. Beverly explained that he had inadvertently bumped Rucker as he was "adjusting the straps on [his] backpack." [Doc. 25-2, at 5]. Nonetheless, Olson gave Beverly a copy of Defendant's anti-harassment policy, which Beverly read and signed. *See* [Doc. 25-2, at 14]. In addition, Olson instructed Beverly "in no uncertain terms that from that day forward he was to avoid any and all interaction with [Rucker]." [Doc. 25-2, at 12-13]. Beverly indicated that he understood this instruction. [Doc. 25-2, at 13].

In addition to the current case, Rucker has filed prior Title VII complaints against the Defendant. Specifically, Rucker has previously filed two lawsuits in the United States District Court for the District of Columbia. *See Harris v. Hantman*, No. 97-cv-1658 (D.D.C. filed July 22, 1997); *Rucker v. Architect of the Capitol*, No. 07-cv-699 (D.D.C filed April 17, 2007).

Rucker contends that Defendant has retaliated against her for making these prior Title VII complaints by placing her on "leave restriction," which she has been on since 2005. [Doc. 28-5, at 4]. As a result, Rucker "must follow special leave procedures and requirements, including submission of documentation along with her leave slips, in order to substantiate her usage of sick leave and other unscheduled absences from work." [Doc. 25-2, at 16]. According to Rucker's Superintendent, Robin Morey, these procedures are standard for all employees who are on leave restriction. The Defendant contends that it placed Rucker on leave restriction only because she had been abusing her leave privileges, not for any retaliatory reason. Specifically, Rucker "consistently maintains low and sometimes negative leave balances. She also often fails to properly document her

Case No. 1:08-cv-767
Gwin, J.

sick [or] unscheduled leave." [Doc. 25-2, at 16].

Rucker asserts two claims against Defendant Architect of the Capitol. First, she alleges that Defendant permitted a hostile work environment in which she was subjected to sexual harassment by a coworker, in violation of 42 U.S.C. § 2000e-2(a)(1). Second, Rucker alleges that Defendant placed her on leave restriction in retaliation for her prior Title VII complaints, in violation of 42 U.S.C. § 2000e-3(a). Both parties have moved for summary judgment on both of Rucker's claims.

## II.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"In determining whether a genuine issue of material fact exists, a Court must view all facts in the light most favorable to the nonmoving party." *Diggs v. Potter*, 700 F. Supp. 2d 20, 39 (D.D.C. 2010). A material fact is any fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, "the substantive law will identify which facts are material." *Id.* A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

With that in mind, the Court considers Rucker's two claims in turn.

### A.

Case No. 1:08-cv-767
Gwin, J.

Title VII of the Civil Rights Act makes it unlawful for an employer to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Permitting a hostile work environment is a form of sex discrimination, and "a workplace becomes hostile for the purposes of Title VII . . . when offensive conduct permeates the workplace . . . [and] alter[s] the conditions of the victim's employment." *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 120 (D.D.C. 2004); s*ee also Coles v. Kelly Servs.*, 105 Fed. App'x 275, 276 (D.C. Cir. 2004) (an employer may be held liable for sexual harassment by a coworker when the employer knew of the harassment and failed to take prompt and appropriate remedial action).

In order to succeed on her claim that the Defendant permitted a hostile work environment, Rucker must establish that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known about the harassment but failed to take prompt remedial action. *Gustave-Schmidt*, 360 F. Supp. 2d at 120.

Rucker can establish that (1) she belongs to a protected group; (2) she was subject to unwelcome harassment by Beverly; (3) the harassment was based on her sex; and (4) Defendant knew about the harassment. Nevertheless, Rucker cannot establish that the harassment was so severe or pervasive such that it altered the conditions of her employment. Moreover, Rucker cannot establish that Defendant failed to remedy the harassment promptly.

In order to rise to the level of a hostile work environment, the harassment claimed must "alter the conditions of the victim's employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). An abusive working environment is created when

Case No. 1:08-cv-767
Gwin, J.

the harassment becomes either severe or pervasive. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). In determining whether harassment is severe or pervasive, "a court must look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

Rucker cites two instances of harassment by Beverly in support of her claim. *See* [Doc. 28-5, at 2-3]. In the first incident, Beverly made sexually suggestive comments to Rucker as she was directing traffic outside the Senate Office Building. *Id.* In the second incident, and viewing the facts in the light most favorable to Rucker, Beverly approached Rucker from behind and groped her. *Id.* Based on these two incidents alone, Beverley's conduct, while reprehensible, does not rise to the level of severity or pervasiveness required to hold an employer liable for permitting a hostile work environment.

First, the harassment was not pervasive. The two incidents occurred roughly a year apart from each other and were the only two instances of harassment that Rucker has suffered during her employment with Defendant. Such infrequent harassment—two, isolated times over a fifteen-year employment period—is insufficient to demonstrate the level of pervasiveness required for a hostile work environment. *Cf. Meritor*, 477 U.S. at 67 (holding that "40 or 50" demands for sexual favors over a three-year period were "plainly sufficient" to state a claim for hostile work environment).

Second, even when taken together, the two incidents of harassment were not severe enough to "alter the conditions of [Rucker's] employment." *Id.* The first incident can appropriately be described as a "mere offensive utterance." *Cf. Li Li Manatt v. Bank of America*, 339 F.3d 792, 799

Case No. 1:08-cv-767
Gwin, J.

(9th Cir. 2003) (repeated instances of offensive comments were not severe enough to create an abusive working environment). The second incident goes further, involving physical contact, but by itself still does not reach a level of severity which "unreasonably interfere[d] with [Rucker's] work performance." *Nat'l R.R.*, 536 U.S. at 116. "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment. . . . Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Gustave-Schmidt*, 360 F. Supp. 2d at 120-21; *see also Tatum v. Hyatt Corp.*, 918 F. Supp. 5, 6-7 (D.D.C. 1994) (single incident not severe enough to create a hostile work environment despite physical contact).

Moreover, an employer is shielded from hostile-work-environment liability if it establishes that: (1) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer, or to avoid harm otherwise." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998); *see also Faragher v. City of Boca Raton*, 524 U.S. 805 (1998).

The Defendant Architect of the Capitol has a policy expressly forbidding sexual harassment and an EEO division charged with investigating and correcting allegations of discrimination. Rucker, for her part, failed to use these resources to prevent and correct her harassment after the first incident. Rucker mentioned Beverly's comments to her supervisor, but did not initiate a formal complaint or notify the EEO division. *Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77 (1998) (holding an employer liable for a hostile work environment where an employee complained of harassment and the employer did not respond).

Nor does Rucker present any evidence that Defendant's formal complaint procedure was

Case No. 1:08-cv-767
Gwin, J.

applied to her in a biased manner. Indeed, when Rucker filed a formal complaint after the second incident, the Defendant treated the matter seriously. The Architect of the Capitol required Beverly to meet with his supervisor, required Beverly to read and sign the Defendant's anti-harassment policy, and instructed Beverly to avoid any and all interaction with Rucker.

Therefore, because the two instances of harassment Rucker identifies do not rise to the level of severity or pervasiveness required to hold an employer liable for a hostile work environment, because the Defendant "exercised reasonable care to prevent and correct any sexually harassing behavior," *Ellerth*, 524 U.S. at 765, and because Rucker "unreasonably failed to take advantage of" the Defendant's formal complaint procedure after the first incident, *id.*, Rucker cannot succeed on her hostile-work-environment claim. Accordingly, the Court concludes that Defendant Architect of the Capitol is entitled to summary judgment on this claim.

B.

Title VII also makes it unlawful for an employer to "discriminate against any [individual] . . . because [she] has made a charge . . . or participated in any manner in a [Title VII complaint]." 42 U.S.C. § 2000e-3(a). Such discrimination includes "any act of retaliation by an employer that well might dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII." *Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006).

Retaliation claims based on circumstantial evidence, like Rucker's, must adhere to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Under this framework, "the complainant in a Title VII trial must carry the initial burden under the statute of establishing a *prima facie* case of . . . discrimination." *Id.* The burden then "must shift to the employer to articulate some legitimate, nondiscriminatory reason for the

Case No. 1:08-cv-767
Gwin, J.

employee's [treatment]." *Id.* Finally, the complainant must then "be afforded a fair opportunity to show that [the employer's] stated reason for [the complainant's treatment] was in fact pretext." *Id.*

In order to establish a *prima facie* case that Defendant retaliated against her for making prior Title VII complaints, Rucker must demonstrate that: (1) she engaged in statutorily protected activity; (2) subsequently, she was subjected to an action that a reasonable employee would have found so materially adverse that she would have been dissuaded from making or supporting a charge of discrimination; and (3) a causal connection existed between (1) and (2). *Rochon*, 438 F.3d at 1219-20.

Rucker has established that (1) she engaged in protected activity by making Title VII complaints and (2) subsequently, she was subjected to adverse treatment in being placed on leave restriction. Nevertheless, Rucker cannot establish the third element of her *prima facie* case because she fails to show that her placement on leave restriction was causally connected to her protected activity.

Other than her own suspicions, Rucker has identified nothing in the record which demonstrates a causal connection between her prior Title VII complaints and her placement on leave restriction. Nor is this a case in which temporal proximity could allow a reasonable factfinder to infer such a connection. *Cf.* Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2009) (temporal proximity alone can support an inference of causation only when the two events are "very close" in time).

The Defendant first placed Rucker on leave restriction in 2005, eight years after her first Title VII complaint and two years before her second. Rucker cannot credibly argue that her placement on leave restriction was causally connected to her second complaint, because she was placed on

Case No. 1:08-cv-767
Gwin, J.

leave restriction two years *before* that complaint was made. Similarly, the eight-year period between Rucker's first complaint and her placement on leave restriction is no evidence of a causal connection between the two and, by itself, cannot satisfy Rucker's burden to set forth a *prima facie* case. *See Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (a twenty-month-long period between a protected activity and an adverse employment action "suggests, by itself, no causality at all").

Moreover, the Defendant has articulated a "legitimate, nondiscriminatory reason" for placing Rucker on leave restriction. *McDonnell Douglas*, 411 U.S. at 803. The Defendant put Rucker on leave restriction because she had abused leave privileges in the past. *See* [Doc. 25-2, at 16]. And Rucker has identified nothing in the record demonstrating that Defendant's proffered, nondiscriminatory reason for placing her on leave restriction was pretextual. *McDonnell Douglas*, 411 U.S. at 803. Accordingly, the Court concludes that Defendant is entitled to summary judgment on this claim.

### III.

For these reasons, the Court **DENIES** Rucker's motion for summary judgment and **GRANTS** Defendant Architect of the Capitol's motion for summary judgment.

IT IS SO ORDERED.

Dated:  June 25, 2012                                   s/     *James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE